**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TERRI GATTI,

          *Plaintiff-Appellee,*

    v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

          *Defendant-Appellant.*

No. 03-15562

D.C. No.
CV-01-00175-FRZ

---

TERRI GATTI,

          *Plaintiff-Appellee,*

    v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

          *Defendant-Appellant.*

No. 03-16183

D.C. No.
CV-01-00175-FRZ

AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Frank Zapata, District Judge, Presiding

Argued and Submitted October 6, 2004
Submission Deferred October 8, 2004
Resubmitted May 31, 2005
San Francisco, California
Filed May 31, 2005

Amended Opinion and Concurrence
Filed July 22, 2005

Before: Pamela Ann Rymer, Richard C. Tallman, and
Carlos T. Bea, Circuit Judges.

8599

Opinion by Judge Tallman;
Concurrence by Judge Rymer

## COUNSEL

Joshua Bachrach, Rawle & Henderson, LLP, Philadelphia, Pennsylvania, for the appellant.

Barry Kirschner, Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C., Tuscon, Arizona, for the appellee.

**OPINION**

TALLMAN, Circuit Judge:

Reliance Standard Life Insurance Company ("Reliance") appeals the district court's summary judgment in favor of Terri Gatti in her action brought under the Employee Retirement Income Security Act ("ERISA") for reinstatement of long term disability benefits. The district court reviewed Reliance's decision to terminate Gatti's benefits *de novo*, because it interpreted an ERISA regulation as placing a temporal limitation on the administrator's discretion and because it found Reliance to have a serious conflict of interest. The district court erred in applying *de novo* review. We reverse and remand.

**I**

Appellant Reliance, which provided long term disability coverage for employees of Paine Webber Group, approved appellee Gatti for long term disability benefits effective May 24, 1993, based on complications related to Hepatitis B. Almost seven years later, in April 2000, Reliance concluded that Gatti was no longer suffering from complications related to Hepatitis B, but that her disability was caused by a mental disorder. Reliance apparently based this determination on tests indicating that Gatti's Hepatitis B was inactive as of 1997, and on physicians' reports that she suffered from bipolar disorder and chronic fatigue syndrome. Disability benefits for mental illness were limited to twenty-four months under Gatti's policy, so Reliance determined that Gatti had already received the maximum amount of benefits to which she was entitled and discontinued her disability payments.

Gatti administratively appealed Reliance's decision. Reliance then had Dr. Stephen Feagin review Gatti's medical records. Based on his review, and without actually examining Gatti, Dr. Feagin concluded that any disability suffered by

Gatti was caused by her psychiatric issues. On October 27, 2000, 177 days after it received Gatti's request for administrative review, Reliance reaffirmed its decision to discontinue benefits.

Following that decision, Reliance gave Gatti an additional opportunity to present "any additional medical evidence which she believes might allow [Reliance] to reinstate her benefits." Gatti did present new evidence, including a December 7, 2000, letter from Dr. Nicholas H. Rice stating that a new HBV DNA test had been performed on Gatti which confirmed that she still had Hepatitis B. On February 6, 2001, 279 days after it received Gatti's request for administrative review, Reliance concluded that the additional submissions were insufficient to warrant reversing its decision to discontinue Gatti's benefits.

Gatti filed a complaint against Reliance, and the district court ruled for her on summary judgment. The court reviewed Reliance's decision to terminate benefits *de novo* because the court reasoned that the termination of Gatti's benefits was not an act of discretion as Gatti's claim was "deemed denied" when Reliance violated the time deadlines for processing administrative appeals established in the ERISA regulations. The court also justified *de novo* review with its finding that Reliance had an actual conflict of interest, demonstrated by Reliance's failure to follow the treating physician rule. The district court concluded that Gatti was entitled to benefits based on the treating physician rule.

## II

We review *de novo* whether the district court applied the appropriate standard of review. *See Alford v. DCH Found.*, 311 F.3d 955, 957 (9th Cir. 2002).

District courts review a decision to deny or terminate benefits under an ERISA plan "under a *de novo* standard unless

the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, that determination is reviewed for abuse of discretion. *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1993); *see also Firestone*, 489 U.S. at 114-15.

## A

**[1]** The regulations implementing ERISA establish minimum requirements for employee benefit plan procedures pertaining to beneficiary claims. 29 C.F.R. § 2560.503-1 (1998). These regulations include a sixty-day time limit for making a decision on review, which may, under certain circumstances, be extended to 120 days. 29 C.F.R. § 2560.503-1(h). If a decision has not been made within these time limits, the claim is deemed denied on review. 29 C.F.R. § 2560.503-1(h)(4).[1]

---

[1]The pertinent regulation was amended in 2000; the alterations apply to claims filed on or after January 1, 2002. *See* 65 Fed. Reg. 70,246 (Nov. 21, 2000); 29 C.F.R. § 2560.503-1(o) (2002). These alterations shorten the time allowed for initial responses to forty-five days (from sixty) and remove the language that says that violations of the time limitations will result in the claim being "deemed denied." 29 C.F.R. § 2560.503-1(f)(3) (2002). At the same time, the new regulation provides that if plan administrators fail "to establish or follow claims procedures consistent with [the new regulation], a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies . . . on the basis that the plan has failed to provide a reasonable claims procedure . . . ," including suing for benefits. 29 C.F.R. § 2560.503-1(l). We do not address the question of whether, under the new regulation, claimants who can establish a failure to comply with the claims procedures established by ERISA regulations are entitled to *de novo* consideration of their claims. The earlier version of the regulation applies to Gatti's claim because her claim was made prior to 2002. All further citations to the Code of Federal Regulations are to the 1998 regulations unless otherwise noted.

**[2]** Relying upon *Jebian v. Hewlett-Packard Co.*, 310 F.3d 1173 (9th Cir. 2002),**²** the district court found that "because Reliance failed to comply with the time limitations in 29 C.F.R. § 2560.503-1(h) when it decided Gatti's request for review, its decision was not an exercise of discretion." We conclude that *Jebian* does not control the issue presented here, and hold that violations of the time limits established in 29 C.F.R. § 2560.503-1(h) are insufficient to alter the standard of review.

The *Jebian* panel was presented with, but did not decide, the issue of whether violating the ERISA regulation time limits alters the standard of review. 349 F.3d at 1103. Factually, *Jebian* was very similar to this case — both involve an ERISA beneficiary's claim that was denied more than 120 days after the date of appeal. 349 F.3d at 1102. However, one factual distinction is critical: the language of the plan being administered in *Jebian* contained the same time limits as are found in the ERISA regulation, whereas Gatti's plan with Reliance did not include time limits. *Id.* at 1103-04. Gatti relies on the ERISA regulation alone to establish that her claim was "deemed denied" and not denied as an act of discretion.

**[3]** The *Jebian* opinion discusses the time limits established by the plan and those imposed by regulation in tandem, but the court's ultimate holding was based solely on the time limitation language in the plan. Noting that "[w]e are just as bound by the Plan language deeming denial in the event that time limits are exceeded as we are bound by the Plan lan-

---

**²**The *Jebian* decision on which the district court relied, and on which the parties' briefs were based, was withdrawn and superceded by *Jebian v. Hewlett-Packard Co.*, 349 F.3d 1098 (9th Cir. 2003), *cert. denied*, No. 03-1202, 2005 WL 1499770 (U.S. 2005). Although the latter opinion contains some clarifying dicta, the holding that "deemed denied" language in a benefits plan cuts off an administrator's discretion remains the same. References to *Jebian* in this Opinion are to the amended opinion published at 349 F.3d 1098.

guage that grants discretion to the Plan administrator[,]" the *Jebian* court held that "we will not defer when a decision is, under the Plan, necessarily the mechanical result of a time expiration rather than an exercise of discretion." 349 F.3d at 1104-05; *see also id.* at 1106 n.6 (distinguishing Judge Tashima's dissent on the basis that the majority opinion relied on the language of the plan). The *Jebian* decision recognizes that there will be cases where benefits decisions are made in violation of the regulations alone, and explicitly leaves this issue open. *Id.* at 1105-06.

[4] We reject Gatti's suggestion that once a benefits administrator has violated the regulation's time limitation, the "deemed denied" language operates to cut off the administrator's discretion, making *de novo* review appropriate.[3] Instead, we read the "deemed denied" language to provide beneficiaries with a "final decision" from which to appeal if the administrator has not made a decision within the timelines established in the regulation. Because a claimant must exhaust her plan's administrative review procedures before she may bring suit in federal court, *Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir. 1980), a mechanism is necessary to allow claimants access to the courts in the event that their plan never makes a decision. Thus, the "deemed denied" language gives claimants the ability to access the courts if the administrator does not exercise its discretion within a reasonable time (as established by the regulations).[4]

---

[3]This is the approach that has been taken in other contexts; we have interpreted a statute that sets deadlines for action by the U.S. Fish and Wildlife Service to prevent the Service from having additional time to make discretionary findings. *See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1178 (9th Cir. 2002) ("The exercise of discretion is foreclosed when statutorily imposed deadlines are not met.").

[4]It appears that the beneficiary in *Jebian* took advantage of this protection. The 120-day time limit for the administrator to respond to Jebian's appeal expired on March 16, 1999. 349 F.3d at 1102. Over six months later, Jebian had still not received a final decision on his appeal, so he filed a complaint in district court on September 29, 1999. *Id.*

**[5]** Significantly, this is the way the U.S. Supreme Court, Stevens J., read this regulatory provision:

> This provision [29 C.F.R. § 2560.503(1)(h)(4)] therefore enables a claimant to bring a civil action to have the merits of his application determined, just as he may bring an action to challenge an outright denial of benefits.

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) (reversing a Ninth Circuit decision that held that the beneficiary had a cause of action against the fiduciary administering her benefits plan because it took the plan 132 days to respond to the beneficiary's appeal, which was ultimately successful).

**[6]** This interpretation is also consistent with the way "deemed denied" is used in other parts of this ERISA regulation. For example, 29 C.F.R. § 2560.503-1(e)(2) states in relevant part:

> If notice of the denial of a claim is not furnished in accordance with paragraph (e)(1) of this section within a reasonable period of time, the claim shall be deemed denied and the claimant shall be permitted to proceed to the review stage . . . .

29 C.F.R. § 2560.503-1(e)(2).[5] We have previously found that the purpose of this language was "to aid claimants in avoiding the obstacles a plan may place in their paths to the appeals board." *White v. Jacobs Eng'g Group*, 896 F.2d 344, 351 (9th Cir. 1989).

---

[5]The administrative history indicates that when this rule was promulgated, the deemed denied language was added to provide access to review. 42 Fed. Reg. 27,427 (1977) ("If the plan fails to act on the claim within these periods of time, paragraph (e) provides that the claim is deemed denied and the claimant may proceed to the review stage, described below.").

Further support for interpreting "deemed denied" to allow claimants to seek judicial review, rather than to cut off administrators' discretion, is provided by the amendments that were made to the regulation in 2000. The current version of the relevant regulation does not include the deemed denied language. Instead, the regulation specifies that if a plan fails to follow the requirements of the regulation:

> [A] claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l) (2002). The Department of Labor did not explain its reasons for this change, but did note, in explaining other changes, that section 503 of ERISA was intended "to assure that claimants whose claims are denied have the ability to take their claims to court without undue delay." 65 Fed. Reg. 70,246, 70,253 (Nov. 21, 2000).

Finally, this interpretation is the most consistent with the way Gatti herself must have understood the regulation — she continued to submit documentation to Reliance well after the 120 day deadline, suggesting that she did not believe her claim to have been deemed denied.

**[7]** Nothing in the history of ERISA or its regulations, nor in the precedent that binds us, indicates that the "deemed denied" language is a temporal restriction on the administrator's discretion. We reject the interpretation of "deemed denied" advanced by Gatti and accepted by the district court and interpret the "deemed denied" language to mean only that Gatti could have brought her lawsuit after the time limits expired. Instead, she chose to continue participating in Reli-

ance's claims review process until, as an act of discretion, Reliance denied her appeal.

**B**

Another question left open in *Jebian* was "whether procedural violations influence the standard of review." 349 F.3d at 1105. Although *Jebian* clarified that a claimant will only be entitled to substantive remedies for procedural violations of ERISA if the claimant can establish that the violation resulted in "substantive harm," we have not previously decided whether procedural violations of ERISA regulations justify a non-deferential standard of review.

**[8]** The case most relevant to this question is *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984). In *Blau*, an ERISA benefits administrator "made no attempt to comply" with ERISA's procedural requirements. *Id.* at 1352. The *Blau* opinion recognized that "[o]rdinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy." *Id.* at 1353. However, the *Blau* panel found an exception to this rule:

> When procedural violations rise to the level that they have in this case, they alter the substantive relationship between employer and employee that disclosure, reporting and fiduciary duties sought to balance somewhat more equally. The quantity of defendants' procedural violations may then work a substantive harm. Thus, in reviewing an administrator's decision, a court must consider continuing procedural violations in determining whether the decision to deny benefits in a particular case was arbitrary and capricious.

*Id.* at 1354. Under *Blau*, procedural violations of ERISA's requirements are evidence of arbitrary and capricious deci-

sionmaking, and can result in substantive remedies *if* they caused the beneficiary substantive harm. *Id.*

The *Blau* panel explicitly left open the question at issue here, but *Blau*'s language offers some guidance:

> Despite its failure to assume any of ERISA's obligations, [the plan administrator] urges upon us the deferential standard of review generally applicable to administrator's decisions under ERISA . . . . We do not decide that this is the only applicable standard of review when ERISA's provisions have been flouted in such a wholesale and flagrant manner.

*Id.* at 1352-53 (internal citations and quotation marks omitted). In *Blau*, it was the "wholesale and flagrant" nature of the benefits administrator's violations that caused the panel to decide that the violations altered the substantive relationship between the employer and employee such that ERISA's purposes were defeated. *Id.* at 1354.

**[9]** It would be inconsistent with the opinion in *Blau* to alter the standard of review on the basis of technical violations of ERISA's requirements. It would also be inconsistent with what has previously been assumed, but not discussed, in our prior decisions which have applied deferential review even when the plan has committed procedural violations. *See, e.g.*, *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1324-26 (9th Cir. 1992) (applying the abuse of discretion standard even though the plan had admitted to procedural violations).

**[10]** The district court interpreted *Jebian* to allow *de novo* review any time a benefits administrator violates the procedural requirements in ERISA's regulations, no matter how small or inconsequential the violation. This interpretation of *Jebian* is inconsistent with *Blau*, and we reject it. Instead, as a corollary to *Blau*, we hold that procedural violations of ERISA do not alter the standard of review unless those viola-

tions are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm.

## III

**[11]** *De novo* review of a plan administrator's decision is justified where the plan administrator has a serious conflict of interest that the beneficiary can demonstrate with "material, probative evidence, beyond the mere fact of an apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1323 (9th Cir. 1995). The district court found that a serious conflict was evidenced by Reliance's failure to follow the treating physician rule, which required that a treating physician's medical opinion be given controlling weight as long as it is well supported and consistent with other substantial evidence. Although we once applied this rule to ERISA cases, it is no longer good law. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (holding that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation"). Because the district court's conclusion that a serious conflict existed was based on the discredited treating physician rule, *de novo* review is not justified on this basis.

## IV

We remand this case for reconsideration under the appropriate standard of review, given that procedural violations of ERISA should not alter the standard of review unless the beneficiary suffers substantive harm, and that the treating physician rule is no longer good law. Unless the district court concludes that *de novo* review is nonetheless justified based

on other evidence of substantive harm, the court should review Reliance's decision for abuse of discretion. *See Firestone*, 489 U.S. at 114-15.

When considering the merits, the district court may properly consider anything that was part of the administrative record before February 6, 2001, the date that Reliance made its final decision. *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999) ("If a court reviews the administrator's decision, whether de novo as here, or for abuse of discretion, the record that was before the administrator furnishes the primary basis for review."). The district court should also reconsider its award of fees and costs depending on the results of the merits determination. *See Barns v. Indep. Auto. Dealers Ass'n of Cal.,* 64 F.3d 1389, 1397 (9th Cir. 1995); 29 U.S.C. § 1132(g).

**VACATED, REVERSED and REMANDED.**

---

RYMER, Circuit Judge, concurring in part and in the judgment:

I agree that we must reverse because of the intervening reversal of the "treating physician rule" in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). However, while I understand the majority's basis for distinguishing *Jebian v. Hewlett-Packard*, 349 F.3d 1098 (9th Cir. 2003), I am hard-pressed to say that "deemed denials" can mean one thing if embedded in a Plan and another if established by regulation. I therefore part company on this issue.