PREGERSON, Circuit Judge,
dissenting.
I dissent. Unlike my colleagues, I do not think that Alta’s decision to deny life insurance benefits to Mrs. Karla Abatie, Dr. Joseph Abatie’s widow, should have been reviewed by the district court for an abuse of discretion. Rather, the district court should have conducted a de novo review of Alta’s decision.
Where a plan administrator flagrantly violates ERISA’s procedural protections causing the beneficiary to suffer substantive harm, a district court should conduct a de novo review of the plan administrator’s benefits decision. See Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978, 985 (9th Cir.2005) (“[PJrocedural violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm.”). I think this is such a case for two reasons. When Alta rendered its final decision denying coverage to Mrs. Abatie in June 2002, it ignored deposition testimony in the administrative record that strongly favored Mrs. Abatie’s claim. Furthermore, Alta waited until its final decision denying coverage to give an additional reason for denying Mrs. Abatie’s claim, thereby precluding her from seeking a full and fair review of its decision to deny benefits. For both of these reasons, Alta failed to comply with ERISA’s notice and full and fair review requirements in assessing Mrs. Abatie’s claim for benefits.
See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1 (1999). Because I believe that these violations were flagrant and caused Mrs. Abatie substantive harm, I would remand this case to the district court for de novo review of Mrs. Abatie’s claim for life insurance benefits.
I. The Denial of Mrs. Abatie’s Claim
Dr. Joseph Abatie, M.D., was a participant in an employee benefit plan covered by ERISA. In 1989, Dr. Abatie was diagnosed with hemolytic anemia. Because of his worsening condition, Dr. Abatie took a leave of absence from his position as a radiologist with the Santa Barbara Foundation Clinic (“Clinic”) in November 1992. Additional testing in February 1993 determined that Dr. Abatie had non-Hodgkin’s lymphoma, a type of cancer affecting the lymphatic system. Dr. Abatie’s condition continued to deteriorate. In mid-1993, it was determined that Dr. Abatie would be unable to return to the Clinic to work. As a result, Dr. Abatie was classified as a retiree.
Nearly five years later, Dr. Abatie’s spleen was removed. Several months after the surgery, on August 11, 1998, Dr. Abatie’s treating physician, Dr. Mark S. Abate, M.D.,[1] indicated that the splenecto- *1068 my was successful and that “[t]he patient’s current hemoglobin level is better than it has been at any time over the past 9 years. At present no further treatment is indicated.” Nevertheless, in June 2000 Dr. Aba-tie died from a combination of conditions caused by his illness.
Mrs. Abatie submitted a claim for life insurance benefits to Alta, the successor in interest to the group insurance policy issued to the Clinic. Home Life Financial Assurance Co. (“Home Life”) was the original issuer of the group policy involved in this claim. Home Life assigned its rights and responsibilities under the group policy to Anthem Health & Life Ins. Co. In July 1998, Alta became the successor in interest to Anthem Health & Life Ins. Co.’s rights and responsibilities.
In a letter dated March 15, 2001, Alta issued its initial denial of Mrs. Abatie’s claim for life insurance benefits. Alta stated that its records did not indicate that a waiver of premium claim was filed within twelve months of the date that Dr. Abatie became totally disabled, as required under the policy.[2] As a result, Alta concluded that coverage was not in force when Dr. Abatie died. Alta did, however, notify Mrs. Abatie of her ability to appeal its decision.
II. The Administrative Appeal and Present Lawsuit
Seeking to overturn Alta’s determination, Mrs. Abatie filed this lawsuit in district court to enforce her rights as a beneficiary under the plan. See 29 U.S.C. § 1132(a)(1)(B). Mrs. Abatie also filed an administrative appeal of Alta’s denial of coverage. In connection with her lawsuit, Mrs. Abatie conducted additional discovery and supplemented the administrative record with the deposition testimony of Melissa Peter, a former Clinic employee, and with several documents from the Clinic’s records.
Ms. Peter testified in her deposition that she requested a waiver of premium from Alta’s predecessor, Home Life, and that Home Life granted the waiver. Ms. Peter testified in pertinent part as follows:
Q. Is one of the things that you did for Dr. Abatie to process a waiver of the life insurance premium with Home Life?
A. Yes.
Q. And did you personally have contact with the Home Life Insurance Company in order to carry that out?
A. Yes.
Q. In fact, did you have a communication from Home Life Financial Assurance Company that the requested waiver of premium had been granted in regard to Dr. Abatie?
A. Yes.
In addition to the deposition testimony of Ms. Peter, Mrs. Abatie submitted several documents from the Clinic’s records indicating that Dr. Abatie’s waiver of premium claim had been granted by Home Life. One of the submitted records describing the status of insurance coverage for several former Clinic employees contained the following type-written entry for Dr. Aba-tie’s life insurance: “Premiums waiver requested in January, 1994. Should be receiving confirmation any day. Premiums *1069 are $170.34.” Directly following that entry is a handwritten note stating, “Waiver was granted 2/94.” Ms. Peter testified in her deposition that she wrote that note on the record around the time the waiver of premium was granted by Home Life.
Another document contained in the Clinic’s records was a handwritten memorandum from Ms. Peter which stated, in part, “We still have Dr. Abatie, his wife and his son on our health plan, we have him and his wife on our dental plan and the life insurance premium is waived.” Ms. Peter testified in her deposition that she wrote that memo in August 1994.
After reviewing the newly supplemented administrative record, Alta sent Mrs. Aba-tie a letter, dated June 6, 2002, denying for the second time coverage on Mrs. Abatie’s life insurance claim. In its second denial, Alta again concluded that the waiver of premium claim was never received by Home Life. But Alta’s letter failed to discuss Ms. Peter’s deposition testimony, as quoted above, which established that Home Life had granted the waiver of premium claim for Dr. Abatie. Instead, Alta referred only to the Clinic records with Ms. Peter’s handwritten notes indicating that a waiver of premium claim had been granted. Alta ignored Ms. Peter’s deposition testimony.
In brushing aside the weight of Ms. Peter’s handwritten notes, Alta commented in its denial letter that the notes did not “specifically state to whom the claim was allegedly submitted, what specific information was provided, who evaluated and approved the claim, and the specific grounds on which the claim was approved.” As further reason for discounting the weight of the newly discovered Clinic records, Alta cited the lack of any record of a waiver of premium claim in the files of Alta’s predecessor, Home Life.[3]
In the same letter, Alta provided, for the first time, an additional reason for denying Mrs. Abatie’s claim. Alta claimed that there was insufficient proof in the administrative record that Dr. Abatie remained totally disabled between the onset of his disability and his death.[4] Alta cited a report from one of its examining physicians, Dr. Peter Karakusis, M.D., who reviewed Dr. Abatie’s medical records during Alta’s initial evaluation of Mrs. Abatie’s claim. Dr. Karakusis concluded that, because Dr. Abatie “enjoyed both prolonged partial remission of his lymphoma and quiescence of secondary hematological complications,” there was insufficient proof of an inability “to perform sedentary work.” Alta also cited the August 11, 1998 report from Dr. Mark Abate, claiming that “Dr. [Joseph] Abatie’s treating physician concluded that his medical condition was ‘better than it has been at any time over the last 9 years.’ ” Contrary to Alta’s assertion, Dr. Abate’s report actually stated that Dr. Abatie’s “current hemoglobin level [not his medical condition] is better than it has been at any time over the past 9 years.”
III. De Novo Review of Alta’s Decision to Deny Benefits his Warranted
Where a plan administrator flagrantly violates ERISA’s procedural protections, and thereby causes the claimant substantive harm, de novo review is warranted. See Gatti, 415 F.3d at 985; see also Jebian *1070 v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1105 (9th Cir.2003) (“When decisions are not in compliance with regulatory and plan procedures, deference may not be warranted.”); Friedrich v. Intel Corp., 181 F.3d 1105, 1110 (9th Cir.1999) (concluding that de novo review was warranted where “procedural irregularities in the initial claims process and an unfair appeals process” tainted plan administrator’s benefits decision). I believe that de novo review is warranted in this case. Alta failed to comply with ERISA’s notice and full and fair review requirements, as required by 29 U.S.C. § 1133 and its implementing regulations.
The first reason that I believe de novo review is warranted is that Alta totally ignored Ms. Peter’s deposition testimony in its June 2002 letter explaining its final decision to deny coverage. As shown above, Ms. Peter’s deposition testimony was part of the administrative record and clearly supported Mrs. Abatie’s assertion that a waiver of premium claim was submitted to and granted by Alta’s predecessor, Home Life. Ms. Peter testified that she personally received oral confirmation from Home Life that a waiver of premium had been granted for Dr. Abatie. While ignoring Ms. Peter’s deposition testimony, Alta stated that the Clinic’s notes regarding the waiver of premium claim for Dr. Abatie were inconclusive. Alta also referred to the absence of any documentary evidence of the waiver' of premium in Home Life’s files. Rather than weigh the absence of documentary evidence against Ms. Peter’s deposition testimony that a waiver of premium was requested and granted, Alta ignored Ms. Peter’s deposition testimony altogether.
The majority minimizes Alta’s failure to consider Ms. Peter’s deposition testimony by concluding that “Alta was not required to delve into a he-said, she-said debate” about whether the waiver of premium was granted by Home Life. Maj. Op. at 1063. Instead, the majority holds that “[i]n assessing whether the waiver of premium application and accompanying proof of disability was ever filed, we hold that a plan administrator is entitled to rely exclusively on the written documentation in the administrative record ...■.” Maj. Op. at 1063. That holding finds no support in the statute, its implementing regulations, or case-law.
ERISA and its implementing regulations require a plan administrator to conduct “a full and fair review ... of the decision denying the claim.” 29 U.S.C. § 1133(2); see also 29 C.F.R. § 2560.503-1(g) (1999); 29 C.F.R. § 2560.503-1. Thus, while a plan administrator is free to weigh conflicting evidence in the administrative record in favor of the plan, see, e.g., Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 880 (9th Cir.2004), “[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant’s reliable evidence,” Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Indeed, we have stated that “where the administrator ‘arbitrarily refuse[s] to credit a claimant’s reliable evidence,’ the administrator’s decision fails the ‘fair review’ requirement of the statute.” Jordan, 870 F.3d at 879(quoting Black & Decker Disability Plan, 538 U.S. at 834, 123 S.Ct. 1965); see also Grossmuller v. Int'l Union, UAW, 715 F.2d 853, 857 (3rd Cir.1983) (“To afford a plan participant whose claim has been denied a reasonable opportunity for full and fair review, the plan’s fiduciary must consider any and all pertinent information reasonably available to him.”) (emphasis added). Current ERISA regulations similarly make clear that the obligation to conduct a “full and fair review” requires a plan administrator *1071 to “[pjrovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.” 29 C.F.R. § 2560.503-l(h)(2)(iv) (emphasis added).
As these authorities illustrate, plan administrators may not cherry-pick evidence when reviewing a denial of a claim for benefits. Thus, I think the majority errs by allowing Alta to disregard Ms. Peter’s deposition testimony. Here that error is pronounced because Alta has an inherent conflict of interest as both the funding source and the administrator of the benefits plan at issue in this case. See Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc., 125 F.3d 794, 797 (9th Cir.1997) (“Given Standard’s dual role as both the funding source and the administrator of the Plan, we are faced with an inherent conflict of interest situation .... ”); see also Brown v. Blue Cross and Blue Shield of Ala., Inc., 898 F.2d 1556, 1561 (11th Cir.1990) (“Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business.”).
There is a second reason that I believe de novo review of Alta’s decision to deny coverage is warranted. Once it decided to deny Mrs. Abatie’s claim for coverage, Alta was obligated under ERISA to provide her with “adequate notice in writing ... setting forth the specific reasons for such denial.” 29 U.S.C. § 1133(1) (emphasis added); see also 29 C.F.R. § 2560.503-1(f)(1) (1999); 29 C.F.R. § 2560.503-1(g)(1). When Mrs. Abatie made her claim for benefits, Alta was also required to provide her “[sjpecific reference to the pertinent plan provisions on which the denial is based,” and “[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.” 29 C.F.R. § 2560.503-1(f)(2) & (3) (1999); see also Booton v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1463 (9th Cir.1997) (“If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial.... ”).
In its first denial of Mrs. Abatie’s claim in March 2001, Alta relied solely on the absence of evidence in Home Life’s files that a timely waiver of premium was granted by Home Life. It was not until Mrs. Abatie came forward with evidence establishing that a waiver of premium had been granted by Home Life that Alta provided an additional reason for denying coverage — insufficient proof in the administrative record that Dr. Abatie remained totally disabled between the onset of his disability and his death. By failing to reveal this reason until its final decision to deny coverage in June 2002, Alta basically “sandbagged” Mrs. Abatie by preventing her from challenging its conclusion in the course of Alta’s administrative review. See Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 620 (8th Cir.1998) (determining ERISA claimants are entitled to “timely and specific” explanations of any denial of benefits and are not to be “sandbagged” by later justifications of the decisions); see also Abram v. Cargill, Inc., 395 F.3d 882, 886 (8th Cir.2005) (concluding that the claimant was denied an opportunity to “meaningfully participate in the appeals process” where he was not provided information “that served as the basis for the Plan’s denial of benefits until after the Plan’s decision”).
*1072 The majority is mistaken insofar as it defends Alta’s delay on the basis that there was an incomplete administrative record in March 2001 when Alta initially denied Mrs. Abatie life insurance benefits. See Maj. Op. at 11831 (“To be sure, a plan administrator could not be expected to articulate all reasons for denial until the administrative record was complete.”). In February 2001, Alta had requested its own examining doctor to review Dr. Abatie’s medical records to determine if Dr. Abatie remained totally disabled until the time of his death. Alta therefore could have revealed this additional reason during its initial denial of Mrs. Abatie’s claim for benefits in March 2001.
The majority asserts that Mrs. Abatie was not prejudiced by Alta’s failure to articulate its additional reason for denying benefits. It states that “[sjince the initiation of her appeal, Abatie has known that even if she were successful in persuading the appellate body that the initial benefit determination that her husband was no longer covered under the Plan was incorrect, she would still need to demonstrate that her husband remained totally disabled until his death.” Maj. Op. at 1061. This reasoning, however, overlooks the basic purpose of ERISA’s notice requirements.
The purpose of ERISA’s notice requirements is to provide the claimant “with information necessary for him or her to know what he or she must do to obtain the benefit,” and to “enable the [claimant] effectively to protest” if a plan persists in its denial of benefits. Juliano v. Health Maint. Org. of New Jersey, Inc., 221 F.3d 279, 287 (2d Cir.2000); see also DuMond v. Centex Corp., 172 F.3d 618, 622 (8th Cir.1999) (“The purpose of [the ‘full and fair review’] requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts.”) (alterations in original); Grossmuller, 715 F.2d at 858 n. 5(“[T]he persistent core requirements” of full and fair review include “knowing what evidence the decision-maker relied upon, [and] having an opportunity to address the accuracy and reliability of that evidence”).
Mrs. Abatie had no reason to think that Alta would deny her claim on the basis that her husband did not remain totally disabled until his death, because Alta failed to articulate this reason in its initial denial of benefits. Accordingly, Mrs. Aba-tie was entitled to assume that if she could demonstrate that Home Life granted the waiver of premium, she would be eligible for life insurance benefits. She therefore reasonably focused her administrative appeal on establishing that a waiver of premium was granted by Alta’s predecessor, Home Life. Furthermore, without notice of this additional justification for denying her claim, Mrs. Abatie did not have an opportunity to challenge the evidence on which Alta relied to reach its final conclusion. Under the majority’s reasoning, Mrs. Aba-tie would have to divine all the possible reasons for the denial of her benefits, and then prepare to rebut them. That is obviously not the “meaningful dialogue between ERISA plan administrators and their beneficiaries” that the statute, regulations, and our caselaw require. Booton, 110 F.3d at 1463.
For the reasons stated above, I think that Alta’s decision to deny benefits to Mrs. Abatie is undeserving of the deference granted it by the majority. ERISA was established in order to “protect ... the interests of participants in employee benefit plans and their beneficiaries,” 29 U.S.C. § 1001(b)(congressional findings and declaration of ERISA policy), and its notice and full and fair review requirements reflect that basic purpose, see 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-l(g), *1073 (h). These requirements are fundamental procedural protections designed for the benefit of plan beneficiaries. Where, as here, those requirements are not met by a plan administrator with an inherent conflict of interest, we should not insulate its decision from adequate judicial review.
Accordingly, I would remand this case to the district court so that it could conduct a de novo review of Alta’s decision to deny life insurance benefits to Mrs. Karla Aba-tie.

. Despite the similarity in their names, Dr. Joseph Abatie and Dr. Mark Abate were not related.

. The policy provided that if an insured becomes totally disabled, life insurance coverage continues under the policy without premium charge if the insured meets several conditions: (1) the total disability must start before the insured reaches age 60; (2) the total disability must begin before coverage ends; and (3) the insurer must receive proof of total disability within twelve months of the date the insured becomes totally disabled. The last provision regarding notice of disability is the "waiver of premium claim” referred to by Alta.

. There is nothing in the record, however, indicating that Home Life or its successors notified Dr. Abatie that his life insurance coverage would be cancelled for nonZ-payment of premiums.

. The policy at issue provided that the insurer would not pay life insurance proceeds in the case of total disability unless it received (1) proof of death, and (2) proof that the insured remained totally disabled until the time of death.