**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 08 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SHAHLA MOBAYEN, | No. 07-55430 |
| Plaintiff-Appellant, | D. C. No. CV 06-01268-R |
| v. | |
| STANDARD INSURANCE COMPANY; GAMBRO, INC. LONG TERM DISABILITY INSURANCE PLAN, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted October 6, 2009[*]
Pasadena, California

Before: KLEINFELD and TALLMAN, Circuit Judges, and TRAGER,[**] District

Judge.

_____

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable David G. Trager, Senior United States District Judge for the Eastern District of New York, sitting by designation.

Shahla Mobayen ("Mobayen") appeals the district court's order upholding the determination of Standard Insurance Company ("Standard") to limit recovery of her long term disability benefit payments under the Gambro, Inc. Long Term Disability Insurance Plan, an employee benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). We have jurisdiction under 28 U.S.C. § 1291. "We review de novo the district court's choice and application of the standard of review to decisions by ERISA fiduciaries, and we review for clear error its underlying findings of fact." Pannebecker v. Liberty Life Assur. Co. of Boston, 542 F.3d 1213, 1217 (9th Cir. 2008) (citing Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962 (9th Cir. 2006) (en banc)). We affirm the district court's decision finding that Standard did not abuse its discretion in making its disability determination.

Standard determined that Mobayen was disabled due to fibromyalgia, a condition for which her group policy provided benefit payments for up to 18 months because the policy defined fibromyalgia as a limited condition. The record demonstrates that Standard conducted six separate reviews over a three-year period, giving Mobayen numerous opportunities to submit additional medical evidence in favor of her disability claim. During the final review of her claim, Mobayen submitted an electromyogram demonstrating "probable radiculopathy;"

2

under the policy, radiculopathy is a non-limited condition, meaning that benefit payments were not restricted to only an 18-month period. In Standard's final decision, it conceded that there was not enough evidence to definitively rule out the presence of radiculopathy, but upheld its prior determination, reasoning that there was no evidence that Mobayen's disability was actually caused by radiculopathy.

Mobayen argues that certain actions taken by Standard during the administration process demonstrate that its decision was influenced by a structural conflict of interest. Such a conflict exists where, as here, "an insurer . . . acts as both the plan administrator and the funding source for benefits." Abatie, 458 F.3d at 965. Mobayen claims that Standard abused its discretion by: (1) providing inconsistent reasons for denying her claim; (2) imposing new policy requirements; (3) arbitrarily disregarding her medical evidence; (4) failing to consider her subjective complaints of pain; (5) failing to consider the effects of her medication; and (6) unnecessarily delaying the decision on her disability claim. Essentially, Mobayen argues that there was ample medical evidence in the record that she was disabled due to chronic pain symptoms caused by radiculopathy.

Her arguments are without merit. Standard does not dispute that Mobayen suffers from chronic pain due to fibromyalgia. However, most critically, it did not find evidence in the record demonstrating that she is also disabled due to

3

radiculopathy. Despite Mobayen's arguments to the contrary, it is clear that Standard's conduct during the administration of her claim does not demonstrate that it was influenced by its conflicted nature. The underlying basis of Standard's original determination, that Mobayen was not disabled due to a non-limited condition, remained consistent throughout the review process. Standard's final determination simply reiterated what was explicit from the policy itself, that a claimant must demonstrate both that the claimant suffers from a non-limited condition and that the claimant is disabled as a result of that condition. Standard considered all of the medical evidence submitted by Mobayen and credited her complaints of pain. It rightfully disregarded certain unsubstantiated diagnoses of radiculopathy. Standard had no reason to consider the side-effect of Mobayen's medication regimen because the record was devoid of any such information.

There is also no evidence that Mobayen was injured by Standard's failure to issue a final decision within the time limits prescribed by ERISA. See Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978, 985 (9th Cir. 2005) (holding that "procedural violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm"). The extrinsic evidence that Mobayen attempted to admit does not undermine Standard's

4

determination that there was no evidence that her disability was caused by radiculopathy or demonstrate that Standard was influenced by its conflict of interest.

The district court did cite to an incorrect legal standard in its discussion of the standard of review. The standard set forth in Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004), and cited by the district court was overturned in Abatie, 458 F.3d at 969. See Montour v. Hartford Life & Acc. Ins. Co., 582 F.3d 933 (9th Cir. 2009), as amended by 2009 WL 3856933, at *7 (9th Cir. Nov. 19, 2009) ("In clarifying the standard of review, Abatie abrogated a line of cases, including Jordan.. . . to the extent that the cases directed reviewing courts to disregard structural conflicts of interest and affirm an administrative decision 'grounded on *any* reasonable basis,' unless a plaintiff could produce sufficient evidence that the conflict was 'serious.'") (emphasis in original) (citations omitted). Although the district court cited to the old test, it specifically considered how the structural conflict of interest might have affected Standard's determination. We are satisfied from its review of the record on this issue that the district court correctly applied the Abatie analysis. Any error in citation to Jordan was thus harmless. **AFFIRMED.**