NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| QUILLER BARNES,<br><br>               Plaintiff - Appellant,<br><br>v.<br><br>AT&T PENSION BENEFIT PLAN -<br>NONBARGAINED PROGRAM,<br><br>               Defendant - Appellee. | No. 13-16005<br><br>D.C. No. 3:08-cv-04058-EMC<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted October 20, 2015
San Francisco, California

Before: WALLACE, SILVERMAN, and CHRISTEN, Circuit Judges.

Barnes appeals from the district court's summary judgment in favor of

AT&T Pension Benefit Plan-Nonbargained Program (Plan). We review de novo

the district court's choice and application of the standard of review to the Plan's

_____

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

decision. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

We review the Plan's decision denying Barnes and other "Lump Sum" class members additional retirement benefits for an abuse of discretion with scepticism. *See Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1023-24 (9th Cir. 2008). Where, as here, a plan unambiguously grants an administrator discretionary authority, the court reviews the administrator's decision for abuse of discretion. *Id*. In determining the standard of review, we take into account the existence of a structural conflict of interest. *Abatie*, 458 F.3d at 965 (holding that a structural conflict of interest exists when an "insurer acts as both the plan administrator and the funding source"); *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-17 (2008) (explaining that a conflict of interest is but one "factor" that courts consider in determining the deference to afford an administrator's decision).

Barnes's arguments as to why the court should review the Plan's decision de novo are unpersuasive. *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 674 (9th Cir. 2011) (holding that the court discounts deference given to administrator's decision to the extent to which it was influenced by a conflict of interest); *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005) (holding that the court reviews an administrator's decision de novo when

substantial procedural errors cause the beneficiary substantive harm). First, contrary to Barnes's assertion, the Plan did interpret Section 3.4(a) when it initially evaluated Barnes's claim: the Plan cited and quoted it in an internal memorandum; included it in the administrative record; and, in its denial letter, paraphrased Section 3.4(a) in explaining why the benefits were being denied. Second, even if the Plan first interpreted Section 3.4(a) after Barnes sued, no case supports Barnes's argument that a plan fiduciary is foreclosed from issuing subsequent interpretations of the plan once a beneficiary commences litigation.

Third, any variant in the Plan's interpretation of Section 3.4(d)(3) does not require de novo review. Although the Plan originally determined that Section 3.4(d)(3) applied to both immediate and deferred annuitants, a Plan representative later wavered on whether Section 3.4(d)(3) did in fact apply to both types of annuitants. This conflicting interpretation, however, had no bearing on the Plan's interpretation of Section 3.4(a) and the benefits it believed Lump Sum recipients, including Barnes, were eligible to receive. With respect to those beneficiaries, the Plan was consistent: Lump Sum recipients were only eligible for cash balance benefits upon their second retirement. As such, the district court had no reason to believe the Plan's multiple conflicting interpretations demonstrated that the Plan

3

was acting in bad faith, and, ultimately, correctly reviewed the Plan's decision for abuse of discretion.

The plain language of the plan does not entitle Barnes to additive benefits. The Plan determined that lump sum payees like Barnes were eligible to receive only cash balance benefits upon their second retirement pursuant to Section 3.4(a). These payees were not eligible to receive the cash balance benefit and redetermined Accelerated Transition Benefit (ATB) (together, additive benefits) that beneficiaries who fall within the purview of Section 3.4(d)(3) receive. This is a reasonable interpretation of the relevant plan provisions. *Compare* Section 3.4(a) ("If the Employee has no prior accrued benefit that is or becomes a Plan liability (e.g., the prior benefit was paid, or deemed to be paid, as a cashout payment)," then the employee is only entitled to cash balance benefits at their second termination), *with* Section 3.4(d)(3) ("If the Employee was receiving, or was eligible to receive, *a monthly pension* under the accelerated transition benefit formula at his or her prior Termination of Employment," the Employee is eligible to a recalculated ATB under this Section (emphasis added)). Because the plan's language is ambiguous and the Plan issued a reasonable, good faith, interpretation of the plan's terms, it did not abuse its discretion. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113

(9th Cir. 2000). Barnes's alternative interpretations of these provisions, even if plausible, do not prevail over the Plan's interpretation. *See id.*

**AFFIRMED.**